AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>Brian Hunter<br><br>*Defendant(s)* | Case No.  3:22MJ072 |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2/22/22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  June 2020/July 16, 2020  in the county of  Montgomery  in the
Southern District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 922(g)(1) & 924(a)(2) | felon in possession of a firearm in and affecting interstate commerce |
| 21 USC s. 843(b) | knowing use of a communication facility to facilitate a felony drug offense |

This criminal complaint is based on these facts:

See Attached Affidavit of Raymond J. StClair

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Raymond J. StClair, TFO of the DEA
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: 2/22/22

_____
*Judge's signature*

City and state:  Dayton, Ohio           Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

AFFIDAVIT

I, Raymond J. StClair, having been duly sworn, do hereby state and depose as follows:

1. I am a Task Force Officer ("TFO") with the United States Drug Enforcement Administration ("DEA"), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. I have been employed by the Dayton Police Department (DPD) since 2000 and have been assigned to its Narcotics Bureau since January 2005. Since January 2019, I have been assigned as a TFO with the DEA. I have extensive prior experience in investigating drug cases that have resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs, and other related offenses. I have been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities, as well as the locations at which they reside and where they store controlled substances and the illegal proceeds derived therefrom. Through training and experience, I am familiar with the practices of narcotics distributors and sellers, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. It has been my experience while conducting other drug investigations that operating drug houses and/or apartments continue to diversify and it is not uncommon to recover different types of illegal drugs from inside the residence. It is also not uncommon to encounter individuals in

1

possession of illegal drugs after leaving from operating drug houses/apartments. In addition, it has been my experience that firearms are commonly kept and located inside operating drug houses and/or apartments.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## I.

## PURPOSE OF AFFIDAVIT

4. I make this affidavit in support of a criminal complaint against, and arrest warrant for:

    a. Anthony Curlett as there is probable cause to believe that he knowingly and intentionally possessed with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, Sections 841(a)(1) and 841(b)(1)(A);

    b. Brian Hunter as there is probable cause to believe that he was a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2); and used a telephone communication facility in facilitate a felony drug trafficking offense, in violation of Title 21, United States Code, Section 843(b).

## II.

## PROBABLE CAUSE

5. During June 2019, DEA Special Agent (SA) Austin Roseberry, DEA TFO Mark Hoyle, and I interviewed a DEA Confidential Source of Information whose identity is known to

me but who shall be referred to for purposes of this affidavit as CS1.[1] CS1 is in a position to learn both first-hand and second-hand information. CS1 was intimate with the workings of a drug trafficking organization ("DTO") that included, among others, Brian Hunter and Anthony Curlett. CS1 had known various members within the DTO for a number of years. CS1 had provided information on this DTO that has been independently corroborated and has proven to be credible and reliable. At this meeting, I showed CS1 four photographs of different individuals who were previously observed during surveillance and believed to associated with the DTO. CS1 identified each of the individuals in the photographs by name, including one of the photographs which was of Brian Hunter. CS1 reported that Hunter supplied drugs to other people and that he was known to deal in kilograms of drugs.

6. In mid-December 2019, SA Roseberry and I met with CS1 who advised that Hunter was trafficking methamphetamine and fentanyl in the Dayton, Ohio. CS1 reported that Anthony Curlett was part of, or affiliated with, Hunter's drug operation. CS1 advised that Curlett lived at the Creekside Villas on Coblegate Drive in Moraine, Ohio, but sold drugs from his mother's home – 708 Berman Avenue, Dayton, Ohio. Specifically, CS1 had overheard a conversation between CURLETT and another person in which CURLETT claimed that he was selling pounds of methamphetamine from his mother's house at 708 Burman Avenue. According to CS1, Hunter, Curlett and another individual received their fentanyl and methamphetamine from a source of supply operating between Dayton and Baltimore, Maryland.

---

[1] CS1 has provided information in the past that has proven to be true and accurate through independent investigation and which has led to multiple successful investigations resulting in the seizure of weapons, money, drugs and arrests as well as the issuance of search warrants. CS1 works for monetary consideration. CS1 has a previous criminal history for possession of drugs.

3

7. During February 2020, DPD stopped a car occupied by two men identified herein as Individual A and B. (I know the identities of Individuals A and B). DPD discovered Individual A and B in possession of over 1 kilogram of methamphetamine. When speaking with police, Individual A and Individual B indicated that they were from Maryland. Both men had cellular devices in their possession, including one with a Maryland area code. DEA obtained a search warrant for the devices. One of the devices showed contact between Individual A and Hunter. Another device showed contact with Curlett.

8. On or about March 9, 2020, FedEx at the Dayton International Airport contacted DEA concerning a suspicious package addressed to "Clifford SUTHERLAND, 3318 Elm Ave, Long Beach, CA, 90807" from "Anthony CURLETT, 708 Burman Ave, Dayton, OH 45426". DEA obtained a search warrant for the package and, upon opening it, discovered $7,500.00 cash concealed in a "Play-Doh" box. The "Play-Doh" box and cash were vacuum sealed, which I know based on my training and experience to be a common method of attempting to conceal the contents from law enforcement detection. Based on my training and experience, I know that drug traffickers commonly send US currency through the mail, FedEx, and UPS to pay drug suppliers for drugs. I further know that California is a source of supply state for drugs.

9. On or about March 10, 2020, Curlett voluntarily reported to the Dayton DEA office and spoke with agents concerning the parcel described above. During the interview, Curlett indicated that he was sending the money to his cousin to buy a car to fix up. Curlett advised that he had dropped the package off to Fedex on March 9 and that he was the one who placed the items into the shipping box. Curlett explained that he had placed the items in the box and that the money was vacuum sealed so it would fit inside of the parcel. Curlett

indicated that the did not anyone to steal the cash. Notably, Curlett arrived at the DEA offices driving a Dodge Durango.

10. During May 2020, DEA placed a surveillance camera on public property and oriented the camera toward 708 Burman Avenue, Dayton, Ohio. While the camera was active, it captured Curlett coming and going from the Burman residence, using a key to enter and lock the door of the property, and parking his Durango there for various periods of time. The camera also captured a woman believed to be Curlett's mother coming and going from the house. Based on these observations, I conclude that Curlett had access to, and some degree of control over, the Berman residence.

11. On or about May 10, 2020, DEA performed surveillance at Curlett's residence at 2640 Creekwood Circle, Apartment 10. While there, DEA saw Hunter and Curlett exit the apartment and leave in Curlett's Durango. During spring and summer 2020, DEA performed spot checks at this location and observed Curlett's vehicle there.

12. During mid to late May 2020, DEA placed a surveillance camera on public property and oriented the camera toward a residence at 916 Hile, Dayton, Ohio. Before deploying the camera, DEA had developed information that Curlett, Hunter and others were using this location to sell controlled substances. For instance, on or about May 19, 2020, DEA performed a trash pull at this location and discovered: rubber gloves, half gallon sized plastic bags that were washed out, half gallon sized bag with a powered residue that field tested positive for suspected fentanyl, a black food seal bag that had been washed out and had the top torn open, numerous plastic baggies that were washed out, numerous plastic baggies containing a powered substance. These items were consistent with drug trafficking activity. During late

5

May 2020, the camera captured Hunter, Curlett and others repeatedly coming and going from the residence after staying their for only short periods of time. After departing, they would return after a short time of absence which is consistent with traffickers delivering narcotics to their customers away from the stash house so as not to raise attention to their illegal activities.

13. In late May 2020 SA Roseberry and I spoke to CS1. CS1 reported that Curlett and Hunter were actively distributing pounds of methamphetamine. CS1 advised about overhearing a conversation in which Curlette stated that he stored narcotics at 708 Burman Avenue.

14. During June and July 2020, DEA conducted surveillance at 7145 North Springboro Pike in the Dayton, Ohio area. Through various records, DEA had connected that location to Hunter. Over those months, DEA performed surveillance at this location and observed Hunter coming and going from it as well as vehicles associated with him parked at the residence.

15. In early July 2020, Dayton Narcotics Detective Mollie Hamby and I interviewed CS1. During the interview, CS1 reported that Hunter, Curlett and another person traveled to Los Angeles, California to obtain illegal narcotics to ship to Dayton, Ohio. When asked if there had been any history of travel by this DTO, CS1 reported that Hunter and Curlett had traveled to Los Angeles, California together last year to obtain illegal narcotics to ship to Dayton, Ohio. CS1 reported Curlett was actively selling methamphetamine from his mother's residence at 708 Burman Avenue and that Curlett kept a room there. CS1 advised that Hunter was selling methamphetamine with Curlett.

16. During July 2020, I obtained federal search warrants for several locations in the Dayton area, including 2640 Creekwood Circle, Apartment 10 (Curlett's residence); 708 Burman Avenue (Curlett's stash house), and 7145 North Springboro Pike (Hunter's residence). DEA executed those warrants on July 16, 2020:

    a. At 2640 Creekwood Circle, agents encountered Curlett there. A search of the residence led to the discovery of a Glock firearm in a spare bedroom at the residence. Curlett was the only person at the apartment.

    b. At 708 Burman, agents recovered approximately 2.8 kilograms of methamphetamine from the garage of this residence. (During a review of video surveillance at Burman, agents saw a person meet with Curlett in the garage and then exit that location with a bundle consistent with a kilogram of controlled substances). They also discovered 2 grams of methamphetamine, cutting agents, and drug paraphernalia in the dresser of a bedroom that Curlett used. Curlett's mother was also at the house. Finally, agents recovered $60,000 in U.S. currency from the residence. Given the proximity of these drugs to controlled substances, I believe that the cash represents the proceeds of drug trafficking activity. Moreover, I believe that Curlett controlled the drugs and cash recovered from 708 Burman.

    c. At 7145 North Springboro Pike, agents encountered Hunter at this location. He and his girlfriend were at the residence. During the search, agents located a loaded FN FiveSeven handgun in the bedroom closet of a child. Based on my training and experience, it appears that, when agents began to execute the warrant, Hunter pitched the gun into the child's room. Additionally, law enforcement recovered approximately $163,022 in cash from the house as well as multiple cellular telephones. DEA obtained search warrants for those devices. On one of the devices – namely, a cell phone recovered from a top drawer of a

7

nightstand in the main bedroom – DEA discovered conversations via text messaging about methamphetamine sales with price, heroin sales, fentanyl sales, cocaine with price, meeting people in Centerville (Ohio) and discussions with others about a "zip" (ounce of narcotics) with the price for the ounce. Based on my experience, I believe that Hunter used this this phone for trafficking narcotics to persons. For instance:

(i) On or about June 25, 2020, stored text messages from Hunter's cellular phone reflected the following exchange between Hunter and a person identified as contact, "Scoob*" where "Scoob" arranged to purchase methamphetamine and heroin from Hunter:

Scoob*: I got 410 can u do ¾ onion of ice and a gram and a half boy?

Hunter: half an 2gs

Scoob*: What ur boy going for?

Scoob*: What can u do bro?

Scoob*: Ok where I got to go?

Hunter: Where u at

Hunter: cal me

(ii) On or about June 29, 2020 into June 30, 2020, stored text messages from Hunter's cellular phone reflected the following exchange between Hunter and a person identified as contact, "Ecko*" where "Ecko*" was purchasing methamphetamine:

Ecko*: What's good with ya? Any icecream around

Ecko*: Okay what's the ticket on a zip

8

| | |
|---|---|
| Hunter: | Hw much u gt |
| Ecko*: | 500 |
| Ecko*: | What's good with ya? |
| Ecko*: | So Scooby come and picked up from u late last night for me and it is not good. He didnt tell me til this morning it was thru u. |
| Hunter: | Aint no cut on there at all Scooby did something to it I got all chunk |
| Hunter: | U talkin da brown |
| Ecko*: | Ya its def not chunky. He told me to hit u up cuz it come from u. I'm talking the icecream. |
| Hunter: | Na u cn cum look at the sht I gt hw much u gt left |
| Ecko*: | I got a zip of it which was 28g and I got 21 left. And ho told me u charged him 550. Smh |
| Hunter: | Hell na he tryna get u he gave me 1100 n got 2 n a bally |
| Hunter: | I swear the sht I got is good chunks |
| Ecko*: | Damn that's some fuck shit man!!! Ugh and I guess he didnt think u and I would talk. I gotta get my money from this junk but I def need good shit |
| Hunter: | I do great business |
| Ecko*: | Right and ur my people so I def hit u right up. I'm like stuck with junk and sent him with 565 |

| | | |
|---|---|---|
| Hunter: | | Listen this wht i cn do next time come ur self n i put sum extras but u nd 2 make him give u yo money back |
| Ecko*: | | He wont give me money back. I'm just a small girl hes a big dude. |
| Hunter: | | Yea i gt u call me |

Based on my training and experience, in the above-described conversations, Hunter discussed the sales of methamphetamine (ice cream) and heroin (boy).

17. Based on discussions with ATF, I know that FN handguns are not manufactured in Ohio and thus had to travel in interstate commerce to reach Hunter in this state. Additionally, I know that, during June 2014, Hunter was convicted in the United States District Court for the Southern District of Ohio, Case No. 3:12CR72TSB, of possessing with intent to distribute 100 grams or more of heroin, for which he was sentenced to 66 months of imprisonment. Based on the length of the conviction, Hunter knows that he was convicted of an offense punishable by a term of imprisonment exceeding one year.

18. Based on the foregoing, I request that this Court issue a criminal complaint against, and arrest warrant for:

    a. Anthony Curlett as there is probable cause to believe that he knowingly and intentionally possessed with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, Sections 841(a)(1) and 841(b)(1)(A);

    b. Brian Hunter as there is probable cause to believe that he was a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) and

924(a)(2); and used a telephone communication facility in facilitate a felony drug trafficking offense, in violation of Title 21, United States Code, Section 843(b).

Respectfully submitted,

_____
Raymond J. StClair
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this __22nd__ th day of February 2022.

_____
Sharon L. Ovington
United States Magistrate Judge